**Pamela Michelle MORGAN and Roy Leon Morgan, Petitioners,**

v.

**The DISTRICT COURT OF WOODWARD COUNTY, the Honorable Ray Dean Linder, District Judge, Respondents.**

**No. P 91–0990.**

Court of Criminal Appeals of Oklahoma.

April 16, 1992.

## ORDER DENYING APPLICATION FOR WRIT OF PROHIBITION

The Petitioners filed an application for this Court to assume jurisdiction and issue a writ of prohibition to the District Court of Woodward County, Case No. CRF–91–46, to prevent enforcement of an alleged ex parte order entered by the District Court October 18, 1991. Said order directs that all sixty-four (64) of Petitioners' witnesses appear and that they remain from day to day until released by the Court; that they be sworn and give full and complete summaries of the information they possess and complete summaries of their testimony on behalf of the Petitioners; that counsel for Petitioners appear and ensure that the witnesses provide complete summaries of the testimony he/she is going to present on behalf of the Petitioners; and that copies of the information and summaries of the testimony be transcribed and provided to the State with the Petitioners and/or the attorney of Petitioners bearing the cost.

Petitioners contend the ex parte order was issued without support in law, that it is in excess of the powers of the District Court, and that the District Judge should be disqualified from hearing this case because of ex parte communications with the prosecutor. Petitioners set forth the following facts:

On October 11, 1991, the District Attorney, subsequent to the preliminary hearing but prior to trial, issued notices to take the depositions or statements of the Defendants' listed witnesses and subpoenaed them to the District Attorney's office; that the witnesses were not infirm, ill, or about to leave the State; that they were witnesses listed by the Defendants pursuant to an order issued by the District Court under the mandates of *Allen v. District Court of Washington County*, 803 P.2d 54 [1164] (Okl.Cr.1991 [1990]). All were listed on Defendants' witness list as testifying to the facts surrounding the incident out of which the charge arose. All were given addresses of Rural Route 3, Woodward, Oklahoma, or Route 1, Sharon, Oklahoma, except one witness, Doug Bombrook, whose ad-

dress was unknown to the Defendants but who would provide an alibi for Defendant Roy Leon Morgan. All, with the exception of Mr. Bombrook, were either the parents, grandparents or other direct relatives of the Defendant. None appeared before the District Attorney, except the alibi witness, who apparently gave his statement to the District Attorney in his office. None of the other witnesses showed up at the District Attorney's office.

Petitioners contend that in the notice to Defendants' witnesses, the State makes an inaccurate and false statement that the District Court had made a finding that Defendants' attorney had not complied with a discovery order, and therefore the trial was continued and additional discovery materials to be furnished. Petitioners contend that no such order existed by the Court but that the prosecutor had contacted Petitioners' attorney and asked for further information, of which none could be provided, whereupon the prosecuting attorney advised that he would seek a continuance to further investigate the matter. A continuance was obtained. Petitioners further contend that when none of the witnesses appeared pursuant to the notice and subpoena, that the District Attorney met with the District Judge on an ex parte basis, filed a motion on October 18, 1991, and obtained an ex parte order on the same date without any hearing or any notice to the Defendants.

In an order entered October 24, 1991, this Court stayed all proceedings in the District Court of Woodward County in Case No. CRF-91-46. We further directed the Respondent, or a designated representative, in an order entered December 6, 1991, to file a response to Petitioners' application specifically addressing Petitioners' contention that the District Court order was issued ex parte. Said response was filed in this Court December 23, 1991. We wish to compliment the Special Prosecutor, Assistant District Attorney Crieg Rittenhouse, on his exceedingly well-documented response to Petitioner's application.

In the State's response, the following facts are set forth:

1. Petitioners were charged April 1, 1991, with two felony counts of Child Abuse. An amended information was filed April 23, 1991, charging Petitioners with two counts of Child Abuse and one count of Murder in the First Degree.

2. Petitioners were bound over for trial on June 13, 1991, on one count of Child Abuse and one count of Murder in the First Degree. Mr. Michael Gassaway, attorney for Petitioners, proposed and entered into an oral agreement on June 13, 1991, with the special prosecutor that if either attorney desired, he could take the sworn statement or deposition of any witness for the State or Petitioners.

3. On July 15, 1991, both attorneys in open Court entered into a stipulation which provided for reciprocal discovery. This is supported by a partial transcript of the proceedings attached as Exhibit "A" to the District Attorney's response and by the order entered by the District Court and signed by both attorneys attached as Exhibit "B".

4. On September 16, 1991, additional motions of Petitioners were scheduled to be argued; that Mr. Gassaway failed to appear in person, but that the State did announce by way of agreement that the remaining motions of Petitioners should be overruled; and that the District Court concurred in the agreement of the parties and confirmed said announcement by contacting the office of Mr. Gassaway. Further, that the District Court was advised that although the State had complied with the District Court's discovery order, that Petitioners had not furnished any material to the State. The District Court informed Mr. Gassaway's office that the trial was set to begin October 14, 1991, and that the Petitioners had not furnished any discovery materials; that September 27, 1991, was set as a deadline for the Petitioners to provide the materials, or appear September 30, 1991, to explain their reasons for failure to comply with said deadline and order. This is supported by an order entered by

the District Court on September 16, 1991, and attached as Exhibit "C" to the District Attorney's response.

5. The Petitioners did not provide the State any materials by the deadline of September 27, 1991, and Mr. Gassaway did not appear or even call on September 30, 1991, to explain reasons for his failure to comply with the deadline. That the special prosecutor contacted Mr. Gassaway by telephone and Mr. Gassaway told the special prosecutor that he would deliver all the materials to the special prosecutor on October 2, 1991, after both attorneys concluded an unrelated preliminary hearing held in Harper County. That the special prosecutor informed the Honorable Ray Dean Linder what Mr. Gassaway had stated and that Judge Linder requested that if the materials were not delivered as agreed, that both attorneys together should call him from the Harper County Courthouse.

6. That the Petitioners' witness list was filed in the Woodward County Court Clerk's office on October 1, 1991. A copy is attached to the District Attorney's response as Exhibit "D".

That after the unrelated preliminary hearing was concluded on October 2, 1991, at the Harper County Courthouse, the special prosecutor asked Mr. Gassaway for the materials and that Mr. Gassaway informed the special prosecutor that he had laid all the material out but had ran off without them. That Mr. Gassaway would not remain at the Harper County Courthouse long enough to call Judge Linder, but that he said he would contact the special prosecutor the next day, October 3, 1991. That Mr. Gassaway never contacted the special prosecutor on October 3, 1991.

7. That on October 4, 1991, Judge Linder was informed that Mr. Gassaway did not deliver the materials and that Judge Linder called Mr. Gassaway's office and left word for Mr. Gassaway to return his call. A copy of the phone bill reflecting Judge Linder's call to Mr. Gassaway is attached to the District Attorney's response as Exhibit "E". That Mr. Gassaway returned Judge Linder's call later in the day and told Judge Linder that he had no idea what the special prosecutor was talking about, that he had fully complied with the discovery order. That Judge Linder immediately contacted the special prosecutor and requested that he come to his office to speak with Mr. Gassaway.

8. That on the telephone, Mr. Gassaway stated to the special prosecutor that he had told the special prosecutor that he would mail the materials, and that he in fact had mailed the materials. The special prosecutor requested that Mr. Gassaway fax him another copy of what he had mailed. That about an hour later, the special prosecutor received by fax a copy of the witness list previously filed, but with some hand written scribbles added. A copy of this is attached to the District Attorney's response as Exhibit "F".

9. With the trial scheduled to begin on October 14, 1991, the special prosecutor filed a motion October 4, 1991, requesting sanctions for the Petitioners' noncompliance of the District Court's discovery order. A hearing date was set for October 9, 1991, at 11:00 a.m. A copy was sent by fax immediately to Mr. Gassaway's office and also by mail. A copy of the motion is attached to the District Attorney's response as Exhibit "G" and a copy of the Order for Hearing filed October 4, 1991, is attached as Exhibit "H".

10. That on October 7, 1991, Mr. Gassaway contacted the special prosecutor and asked why the motion for sanctions was filed and was told that the special prosecutor needed all the information and discovery materials as ordered by the District Court to properly prepare for trial. That Mr. Gassaway stated he did not know anymore about the witnesses than he had already provided and any further information had to be obtained through his clients' family. The special prosecutor reminded Mr. Gassaway about the previous agreement on taking sworn statements or depositions

and Mr. Gassaway stated he would sure stick to that agreement.

That on September 19, 1991, Mr. Gassaway had the Woodward County Court Clerk issue 50 blank subpoenas. This is supported by a copy of the Woodward County Court Records attached as Exhibit "I" to the District Attorney's response.

11. On October 9, 1991, Mr. Gassaway's office called the Court Clerk's office in Woodward and told them he could not be in Woodward for the motion hearing and did not have any objection to continuing it (meaning, according to the Clerk, the trial date). A copy of the note is attached to the District Attorney's response as Exhibit "J".

12. On October 9, 1991, Mr. Gassaway appeared on behalf of Petitioners at the hearing via telephonic communication. The District Court found that Mr. Gassaway had not complied with the discovery order and continued the trial to December 2, 1991, at 9:00 a.m., without objection, and that additional discovery materials were to be furnished by Mr. Gassaway. This is supported by a copy of the District Court's order attached to the District Attorney's response as Exhibit "K" and a copy of the partial transcript of the hearing attached as Exhibit "L".

13. That on October 11, 1991, based on the previous agreement between the special prosecutor and Mr. Gassaway, the process was started to obtain statements and information from family members of the Petitioners and an alibi witness by the name of "Doug Bembrook". That Mr. Gassaway had not provided the content of the alibi and also stated, that the address was unknown. The special prosecutor could not locate a "Doug Bembrook" but personally knew a resident of Woodward by the name of "Doug Benbrook". A copy of the documents the special prosecutor served on the witness and mailed to Mr. Gassaway is attached as Exhibit "M" to the special prosecutor's response.

14. On October 17, 1991, none of the witnesses appeared to give statements except Mr. Doug Benbrook. Mr. Benbrook was very cooperative. He stated that family members of the Petitioners had contacted him and told him that Mr. Gassaway said no one needed to appear to give a statement or information. Mr. Benbrook did make a statement concerning information about the case but it did not consist of what the special prosecutor considers an alibi as previously indicated by Mr. Gassaway.

15. That the special prosecutor called Mr. Gassaway to inquire why he told the witnesses not to appear. Mr. Gassaway stated they did not have to appear. When further inquiry was made about the discovery materials and information that Mr. Gassaway was to furnish by his agreement and order of the District Court, Mr. Gassaway stated basically that he had already complied and was not going to furnish anything else at all. That Mr. Gassaway further stated that the special prosecutor could go to trial with what he has furnished, or exclude Petitioners' witnesses from testifying. The special prosecutor told Mr. Gassaway that in his opinion, if the Petitioners' witnesses were excluded, any conviction and especially one involving the death penalty would be reversed on appeal. Mr. Gassaway responded that he was certain it would be reversed if Petitioners' witnesses were excluded and that was his insurance. Mr. Gassaway further indicated that the special prosecutor could get any additional order from Judge Linder, but that he was not going to comply or give any other information.

16. On October 18, 1991, the special prosecutor presented a written motion to Judge Linder and obtained an order from Judge Linder as a means to enforce the District Court's July 15, 1991, discovery order and Mr. Gassaway's agreement. A copy of the motion and the order are attached to the District Attorney's response as Exhibits "N" and "O".

 The issue before us is not a unilateral order of the District Court about discovery. This is an issue of defendants counsel's failure to comply with the agreed order of discovery and the Trial Court's

ability to enforce the order agreed to by the attorney—Mr. Gassaway, orally and by signing an order, agreeing to reciprocal discovery. The Trial Court accepted the agreed discovery procedures entered into by counsel for Petitioners and the State. Now, Mr. Gassaway objects to performing as he agreed and he is in violation of the Trial Court's order.

The record does not support the allegation of Mr. Gassaway that this is an ex parte order. To the contrary, Mr. Gassaway was a party to an agreement, was afforded an opportunity to appear at all hearings, but he failed to do so. Even with Mr. Gassaway's failure to appear, the Trial Court attempted to obtain his participation through telephone conferences. Therefore, Mr. Gassaway's failure to appear and participate is purely by choice, or by strategy of defense counsel.

This Court in *Allen v. District Court of Washington County*, 803 P.2d 1164 (Okl. Cr.1990), set forth procedures for meaningful pretrial discovery for each party in a criminal case hoping to expedite the trial and help alleviate the pressing problem of pretrial disclosure. We held that the trial court shall be empowered to order sanctions for noncompliance. We offered a listing of possible sanctions. This listing was not all inclusive. We directed the trial court to grant *appropriate* relief when the prosecuting attorney or the defendant fails to comply with the discovery order, which may or may not include the sanctions listed.

The Special Prosecutor asked that we outline some realistic enforcement procedures for complying with discovery orders. We agree with the Special Prosecutor that it would be inappropriate to exclude defense witnesses from testifying in a death penalty case such as the matter before this Court when the actions of defense counsel, and not the defendants, have prevented compliance with the Trial Court's order.

However, while we are not limiting nor advising the District Court on additional enforcement sanctions, the District Court may well also look at direct or indirect contempts of court, 21 O.S.1991, § 565 et seq.; 21 O.S.1991, § 455, when any person prevents another from giving testimony who has been duly summoned or subpoenaed; and/or, 21 O.S.1991, § 546, when any person prevents a party from producing or disclosing evidence or from procuring the attendance or testimony of any witness. The District Court has inherent and statutory powers to do many things when the judicial process is thwarted. Further, Rule 8.3 of the Rules of Professional Conduct requires an attorney, or a judge, with knowledge of professional misconduct to file a Bar complaint.

12 O.S.1991, § 2011, reminds us that the signature of an attorney on a pleading, motion, or other paper, places the primary responsibility for good faith upon the attorney. "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

We do not find that the sanctions imposed to this date by the District Court are inappropriate or an abuse of discretion. We observe, however, that it appears in this matter that any remedial steps ordered by the District Court to date, or additional future sanctions, should be directed not at the Petitioners, but at Petitioners' counsel.

We further find Mr. Gassaway's bald assertions not supported by the record and in some instances contradicted by the record as set forth by the Respondent. *See* Exhibits "K" and "L" attached to response by District Attorney. The record reflects that the Trial Judge has shown great restraint in the sanctions imposed.

Mr. Gassaway was given a deadline of September 27, 1991, to provide discovery materials as he had previously agreed, or appear September 30, 1991, to show cause why he had not done so. Mr. Gassaway did not provide any materials or appear as ordered and he was not sanctioned. The

prosecuting attorney filed a motion requesting sanctions for Mr. Gassaway's noncompliance of the District Court's discovery order; a hearing date was set for October 9, 1991; Mr. Gassaway appeared via telephonic communication. The District Court continued the trial because of the lack of information furnished by Petitioners' counsel and directed Mr. Gassaway to furnish additional information. Mr. Gassaway was not sanctioned. The prosecuting attorney then proceeded to subpoena Petitioners' witnesses to obtain statements and information. Only one appeared. Judge Linder then entered the order of October 18, 1991.

We do not agree with Mr. Gassaway's assertion that the October 11, 1991, notices to Petitioners' witnesses for pretrial depositions were issued without authority of law. The record before this Court reflects that if inappropriate actions occurred, they were not on the part of the District Court or the Special Prosecutor as alleged by the Petitioners.

The matter brought before this Court by Petitioners' counsel is not whether an ex parte order for discovery was issued. The question is how does a District Court enforce a discovery order when counsel for defendant agrees to reciprocal discovery, enters into a stipulation providing for reciprocal discovery in open court which is embodied into an order and signed by all parties, and then does not comply.

Accordingly, the application by Petitioners for a writ of prohibition is DENIED. Further, the stay imposed by this Court October 24, 1991, is hereby LIFTED. The Trial Court may impose all of the sanctions granted to date or impose additional sanctions pursuant to this order at the Trial Court's discretion.

IT IS SO ORDERED.

/s/James F. Lane
JAMES F. LANE, Presiding Judge
/s/Gary L. Lumpkin
GARY L. LUMPKIN, Vice Presiding Judge
/s/Tom Brett
TOM BRETT, Judge

/s/Charles A. Johnson
CHARLES A. JOHNSON, Judge