Edward William ALLEN, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–95–0534.

Court of Criminal Appeals of Oklahoma.

Aug. 14, 1997.

Edward William Allen, Jr., pro se and James Rowan, Oklahoma Indigent Defense System, Norman, Stand–By Counsel for Defendant at trial.

William H. Luker, Deputy Division Chief, Capital Direct Appeals Division, Oklahoma Indigent Defense System, Norman, for Appellant on appeal.

Scott Julian and Fausto Hernandez, Asst. Dist Attys., Texas County Dist. Attorney's Office, Guymon, for the State at trial.

W.A. Drew Edmondson, Atty. Gen. of Oklahoma and William L. Humes, Asst. Atty. Gen., Oklahoma City, for Appellee on appeal.

## OPINION

CHAPEL, Presiding Judge:

Edward William Allen, Jr. was tried by a jury in Texas County District Court, Case No. CRF–93–184, and convicted of First Degree Malice Aforethought Murder, in violation of 21 O.S.1991, § 701.7. After the jury found Allen guilty of murder, his case proceeded to the capital sentencing phase of trial. The jury found Allen posed a continu-

---

**1.** The State alleged the following aggravating circumstances in support of its request for the death penalty: (1) Allen knowingly created a great risk of death to more than one person, 21 O.S.1991, § 701.12(2); and (2) the existence of a probability that Allen would commit criminal acts of violence that would constitute a continuing threat to society, 21 O.S.1991, § 701.12(7).

**2.** On March 15, 1995, this Court granted a writ of mandamus allowing Allen to represent himself at trial and during all pre-trial proceedings occurring after March 15.

**3.** Allen raised nineteen propositions of error in his appellate brief.

---

ing threat to society[1] and sentenced him to death. In accordance with the jury verdict, the Honorable George H. Leach imposed the death penalty. Allen appealed his conviction and death sentence to this Court.

On November 7, 1993, Allen shot and killed his wife. Allen represented himself at trial.[2] His defense was that he was either insane at the time he shot his wife or the shooting was an accident. The jury rejected both defenses and found Allen guilty of first degree murder.

█ In his third proposition of error,[3] Allen argues the trial court committed reversible error by refusing to allow Dr. Phillip Murphy, a clinical psychologist, to testify. Based on an offer of proof made at trial, Dr. Murphy would have testified that Allen was insane at the time he killed his wife. Obviously, Dr. Murphy's testimony was critical to Allen's defense. After a thorough review of the trial and record below as well as the legal arguments of the parties, we agree that the trial court erred in excluding Dr. Murphy's testimony and find that this error requires the Court to reverse and remand Allen's case for a new trial.[4]

From the outset of this case, Allen's mental health was an issue,[5] and Allen's intent to plead insanity was known well in advance of trial. At Allen's December 19, 1994 arraignment hearing,[6] which was held more than four months before trial, Allen's counsel stated, "we will give the Court and the State notice that we will rely on the insanity defense and that Mr. Allen will need to be

---

**4.** Because Proposition III is dispositive of this case, we will address only that proposition of error.

**5.** Prior to trial, the trial court ordered several mental competency examinations of Allen and conducted competency hearings to determine whether Allen was mentally competent to stand trial.

**6.** At the December 19, 1994 arraignment hearing, Allen was still represented by counsel.

examined by a psychiatrist." [7] After this hearing, Allen repeatedly and unwaveringly indicated his intent to plead insanity,[8] and repeatedly stated his intent to obtain expert assistance to support his claim.[9]

Allen's trial began on May 1, 1995. On May 2, the trial court was advised that the Oklahoma Indigent Defense System (OIDS) had retained Dr. Murphy to examine Allen and assist in his defense. The State objected arguing that Allen failed to give proper notice of his intent to plead insanity.[10] The trial court agreed with the State and excluded Dr. Murphy's testimony because Allen failed to file a written application stating his intent to plead insanity. The trial court also excluded Dr. Murphy's testimony on the grounds that Allen failed to comply with discovery rules.

Nonetheless, during a weekend recess during the course of trial, Dr. Murphy examined Allen in jail. When it came time for Allen to put forth his defense, he called Dr. Murphy. The trial court refused to allow Dr. Murphy to testify. Allen then testified on his own behalf. He called no other witnesses.

Although the trial court refused to allow Allen to call Dr. Murphy, the trial court ultimately submitted the question of Allen's sanity at the time of the crime to the jury. The State had no objections to the trial court's instructions to the jury on the issue of insanity. Evidently, the only restriction put on Allen's ability to present an insanity defense was to bar him from presenting his only mental health expert witness.

Title 22 O.S.1991, § 1176(a) provides:

If the defendant intends to raise the question of mental illness or insanity at the time of the offense, the defendant shall file an application with the court at least twenty (20) days before trial. The procedure to be followed for review of such an application will be the same as provided in Section 1175.3 of Title 22 of the Oklahoma Statutes.

The purpose of § 1176 is to give the State notice of the defendant's intent to plead insanity so that the State may have adequate time to investigate and respond to that claim. On December 19, 1994, more than four months before trial, Allen gave notice in district court that he intended to plead insanity and seek expert assistance. This intent was unwavering. Without a doubt, the State knew Allen intended to plead insanity [11] and to seek expert assistance in support of that defense.[12] Under these circumstances, we find that Allen did not violate § 1176 and that the exclusion of Dr. Murphy on this ground was improper.[13]

7. Dec. 19, 1994 H. Tr. at 15.

8. The record below is replete with examples indicating that the State knew that Allen intended to plead insanity. *See e.g.* Dec. 19, 1994 H. Tr.; Feb. 22, 1995 H. Tr.; Apr. 11, 1995 letter from Executive Director of Oklahoma Indigent Defense System filed in district court on Apr. 20, 1995; Apr. 18 H. Tr.; Apr. 26, 1995 State's Response to Allen's Second Petition for a Writ of Mandamus filed with Court of Criminal Appeals; Apr. 28, 1995 Pro Se Motion for a Continuance. In its appeal brief, the State admits Allen indicated he would rely on an insanity defense on at least three occasions prior to trial. State's Br. at 17.

9. *See id.*

10. O.R. Vol. IV at 739.

11. On the first day of trial, the prosecutor repeatedly referred to the insanity defense during the jury selection process. These comments were made prior to Allen's announcement that he wished to be examined by Dr. Murphy.

12. Prior to trial, Allen specifically advised that he was contacting OIDS to obtain funds for hiring an expert. The Original Record in this case reveals that a letter from the Executive Director of OIDS to Allen was filed with the district court on April 20, 1995. In this letter the director of the agency acknowledged Allen's request for expert assistance and provided Allen with forms to request funds for expert witnesses. This letter is dated April 11th and a copy of the letter was sent to the trial court and district attorney.

13. The State's reliance on *United States v. Buchbinder,* 796 F.2d 910 (7th Cir.1986), a non-capital federal case, is misplaced. *Buchbinder* concerned a federal procedural rule that required defense counsel to provide written notice of an intent to use a mental health defense. In *Buchbinder,* the court found that the defendant did not manifest a clear intent to rely on a mental health defense. In contrast, here, Allen consistently stated that he intended to argue that he was insane at the time he shot his wife. Moreover, the court in *Buchbinder* concluded that the defendant was able to present a great deal of mental health evidence and "was not deprived of the

The trial court also excluded Dr. Murphy's testimony on the grounds that Allen failed to comply with discovery requirements. The district attorney did not file a formal written request for discovery, and there was no discovery order for Allen to violate. At best, the parties had an informal agreement. The State knew, more than ten days before trial, that Allen had applied to OIDS for funds for expert assistance. There is no evidence showing when OIDS retained Dr. Murphy to examine Allen. There is no evidence to suggest that Allen knew prior to May 2 that OIDS had retained Dr. Murphy to assist him. Again, under these circumstances, we find that Allen did not violate the parties' informal discovery agreement.

■ Furthermore, even if Allen had violated a discovery obligation, in a death penalty case like this one, the sanction of excluding Dr. Murphy's testimony was far too severe. In *Wisdom v. State*,[14] this Court reversed and remanded a death penalty case for resentencing because the trial court excluded a mental health witness as a sanction for a discovery violation. Likewise, in *Morgan v. District Court of Woodward County*,[15] the Court found that exclusion of defense witnesses as a sanction for a discovery violation in a death penalty case was too severe a sanction. Moreover, the Compulsory Process Clause of the Sixth Amendment may be violated by excluding a material defense witness as a sanction for discovery violations.[16] Excluding a material defense witness is appropriate only where the discovery violation is "willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence."[17] We find that Allen did not willfully mislead the prosecutor and that exclusion of Allen's key defense witness was improper.

Clearly, the trial court erred in excluding Dr. Murphy's testimony. Moreover, Dr. Murphy's testimony was the cornerstone of Allen's insanity defense and the prejudicial impact of the trial court's error is manifest. Under the facts of this case, we find that the trial court's decision to exclude Dr. Murphy's testimony constitutes reversible error. Accordingly, this case must be reversed and remanded to the district court for a new trial.

## DECISION

The judgment and sentence of the district court is **REVERSED AND REMANDED TO THE DISTRICT COURT FOR A NEW TRIAL.**

JOHNSON and LANE, JJ., concur.

LUMPKIN, J., specially concurs.

STRUBHAR, V.P.J., dissents.

LUMPKIN, Judge, specially concurring:

I agree the judgment and sentence in this case should be reversed. I write separately to explain what I consider to be potentially misleading language in the opinion.

The opinion contains dicta dealing with an appropriate sanction for failing to comply with discovery orders. After determining the error in not allowing the clinical psychologist to testify constituted reversible error, the opinion goes on with a "furthermore" dealing with the severity of a discovery sanction (Op. at 937). The "furthermore" adds nothing to the opinion, and could lead to problems in the future. This could be read as holding that if something is critical to the defense but was not disclosed pursuant to a valid discovery order, the judge cannot sanction a defendant by refusing its admission into evidence, regardless of its merit as a sanction. That is not a correct statement of the law. To be sure, trial courts must be very careful in formulating appropriate sanctions for discovery violations. However, a reading of statutes and caselaw reveal other

---

substance of his defense...." *Id.* at 916. Unfortunately in Allen's case, the exclusion of Dr. Murphy cut out the heart of Allen's defense, leaving only Allen himself to claim he was insane without any kind of expert evidence to support his personal assertions.

14. 918 P.2d 384 (Okl.Cr.1996).

15. 831 P.2d 1001, 1005 (Okl.Cr.1992).

16. *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

17. *Id.*, 484 U.S. at 415, 108 S.Ct. at 656.

factors should be considered in addition to whether the evidence was critical to the defense. Under the Court's dicta, a defendant could circumvent discovery provisions simply by withholding it, then claim the evidence was critical to his defense. I do not think that is the intent of the Oklahoma Criminal Discovery Code, 22 O.S.Supp.1996, § 2001 et seq. The language contained in the opinion is too broad, and I do not believe it was the intent of this Court to go after a gnat with a sledgehammer by holding the Oklahoma Criminal Discovery Code could be circumvented in this manner. Rather, I read this language as applying solely to the facts and circumstances of this case. In that light, I agree the defense witness was improperly excluded.

STRUBHAR, Vice Presiding Judge, dissenting:

I concur that this matter must be reversed and remanded for resentencing because Appellant was precluded from introducing mental health evidence that served to mitigate punishment. The uniqueness of the death penalty demands that material defense mitigation witnesses not be excluded. *See Wisdom v. State*, 918 P.2d 384 (Okl.Cr.1996).

However, I disagree with the majority's conclusion that Appellant's conviction must be reversed and remanded for a new trial. Appellant was found competent to stand trial at two post-examination competency hearings. After being found competent but prior to trial, Appellant requested that he be allowed to represent himself. The trial court granted Appellant's motion but later reversed itself.[1] Appellant petitioned this Court for a writ of mandamus and argued that he had a constitutional right to represent himself and that he had voluntarily and intelligently waived his right to counsel. This Court granted the writ of mandamus allowing Appellant to represent himself at trial stating that Appellant had the right to defend himself and that his choice was made "knowingly and intelligently."

A defendant who proceeds *pro se* is held to the same standard as an attorney. *Bowen v. State*, 606 P.2d 589, 594 (Okl.Cr.1980). The record before us shows that Appellant was competent and that he voluntarily and knowingly waived his right to counsel. As such, the trial court was required to hold Appellant acting *pro se* to the same standard as any other licensed attorney.

Title 22 O.S.1991, § 1176 requires a defendant to file a written application at least twenty (20) days before trial if he intends to use the insanity defense. As the majority opinion states, Appellant's intent to plead insanity was known well in advance of trial because Appellant advised that he intended to raise an insanity defense at his arraignment hearing, in several motions, and at several other hearings before trial. Even though Appellant had stated that he intended to pursue an insanity defense, he, acting as his own counsel, was responsible for filing the Section 1176 application which he failed to do. Since this application was never filed, the presumption arose that Appellant elected not to call a mental health expert to testify on his behalf. Because Appellant failed to file the proper application, he waived his right to call any mental health expert to substantiate his insanity defense. Accordingly, the trial court properly ruled that the testimony of Appellant's mental health expert could not be introduced in the first stage of trial.[2]

Because Appellant knowingly accepted the burdens of representing himself, it is my opinion that the trial court did not err in holding Appellant to the standards of a licensed attorney. Appellant was required to file an appropriate application before he could call a mental health expert to substantiate his insanity defense. Appellant did not do so and thus waived his right to introduce testimony by a mental health expert.

1. The trial court reversed its decision to allow Appellant to represent himself finding that it would delay the trial, that Appellant's conduct had been totally disruptive thus far, and that he had made unreasonable demands for resources and supplies to represent himself.

2. On the second day of trial, Appellant advised the trial court that the Oklahoma Indigent Defense System had retained a mental health expert to examine him. The State objected arguing that Appellant had failed to comply with Section 1176.

For the reasons stated above, I respectfully dissent.