**UNITED STATES of America, Plaintiff,**

**v.**

**Timothy James McVEIGH and Terry Lynn Nichols, Defendants.**

**Criminal Action No. 96–CR–68–M.**

United States District Court,
D. Colorado.

May 29, 1996.

Patrick M. Ryan, U.S. Attorney for the Western District of Oklahoma, Oklahoma City, OK and Joseph Hartzler, Special Assistant U.S. Attorney, Assigned from S.D. Illinois, Denver, CO, for plaintiff.

Stephen Jones, Richard H. Burr, III, and Robert Nigh, Jr., Jones, Wyatt & Roberts, Enid, OK, for defendant McVeigh.

Michael Tigar, Ronald G. Woods, and N. Reid Neureiter, Denver, CO, for defendant Nichols.

MEMORANDUM OPINION AND ORDER

MATSCH, Chief Judge.

Rule 53 of the Federal Rules of Criminal Procedure restricts conduct in federal courtrooms in these words:

The taking of photographs in the courtroom during the progress of judicial proceedings or radio broadcasting from the courtroom shall not be permitted by the court.

Effective January 1, 1984, and under statutory authority given in 28 U.S.C. § 753(b), the Judicial Conference of the United States approved the use of electronic sound recording equipment as a means of recording proceedings in federal district courts, subject to the discretion and approval of the presiding judge. The Conference directed individual judges to determine the method to be used as the means of producing a verbatim record

of court proceedings and instructed as follows:

> The judge should consider the nature of the proceedings, the availability of transcription services, and any other factors that may be relevant in determining the method to be used in producing a verbatim record that will best serve the court and the litigants.

VI Administrative Office of the United States Courts, *Guide to Judiciary Policies and Procedures,* Chap. XVI, Part A, p. 3 (citing Report of the Proceedings of the Judicial Conference of the United States, September 1983, pages 47 and 48).

Under guidelines issued by the Director of the Administrative Office of the United States Courts deputy clerks have been trained and serve as electronic court recorder ("ECR") operators who operate approved sound recording equipment, maintain logs of proceedings for use as aids in transcription of the audio tapes and certify the accuracy of the audio tape cassettes to be preserved as the official court record. *Id.* at Chap. XVI, Part B, § 4. The regulations require the clerk of court to provide for reproducing audio recordings and "making them available as required by law, at the rates prescribed by the Judicial Conference." *Id.* at Chap. XVI, Part B, § 5. The clerk must also establish a system for listening to the audio recordings in the courthouse. *Id.*

Part D of the regulations provides for sale of copies of tapes to the public.

> Upon request, the court may reproduce tapes on its own duplicating equipment or on commercial equipment and may sell copies of electronic sound recording tapes *made as the official record* to the public at the prevailing rate prescribed by the miscellaneous fee schedule in effect. Orders for tape copies should be submitted to the clerk's office on a Tape Order Form. (See Exhibit D–1.) This provision does not apply to reporters' backup tapes used to augment the record.

*Id.* at Chap. XVI, Part D (emphasis added).

In Part E of the regulations, court reporters are authorized to use their own electronic sound recording equipment to assist them in preparing the verbatim record of proceedings. Their tapes remain the personal property of the court reporters and there is no public access to them. *Id.* at Chap. XVI, Part E, § 4.

During the past ten years, I have used electronic sound recording equipment and ECR operators to make the official record of almost all court proceedings. Routinely, the clerk's office has sold copies of the official audio tape cassettes as well as written transcripts prepared from the tapes to anyone wanting to purchase them, at rates established by the Judicial Conference. Certified written transcripts have been submitted as the records on appeals.

When I was assigned to this case by designation to the Western District of Oklahoma I continued the practice of the previous judge in that district, using official court reporters to make the record by stenographic methods for the hearings that I held in Oklahoma City. Before the first hearing in Denver, after the transfer of venue to this district, I designated an official court reporter employed by this district court to use mechanical stenography as the method for producing the verbatim record of all court proceedings in this case. Considering the complexity of this case, the number of lawyers appearing, the intensity of public interest and the volume of requests for access to court records, I decided to use the court's electronic sound recording equipment and ECR operators as a redundant method to aid the court reporter in keeping a complete and accurate written record.

When a hearing was held on April 9, 1996, the clerk's office sold copies of the audio tapes to the public at the rates prescribed for proceedings officially recorded by means of the ECR system. At the request of news groups, cassettes were taken from the courtroom as they were completed and copies were made and sold in the clerk's office while the hearing was in progress. Written transcripts from the court reporter were available for sale shortly after the hearing.

Speakers connected with the sound system in the courtroom were placed in an adjacent courtroom to enable members of the public and news agency representatives who could

not find seating in the courtroom to listen to the proceeding. No copying of that "sound feed" was permitted.

News reporters occupied approximately one-half of the available seats in the courtroom under a reserved seating plan. Additionally, reporters listened to the sound transmission in the adjacent courtroom. Some of the reporters elected to attend in the auxiliary courtroom because it was more convenient. A "press room" was set up in a connected office building for logistical support services to all news organizations.

Radio and television broadcasters used their copies of the audio tapes in their news coverage of the court proceedings by playing small portions of the arguments of counsel. These "sound bytes" were played on the same day as the hearing.

By a motion filed on April 17, 1996, representatives of both print and electronic news gathering enterprises requested extension of the sound feed from the adjacent courtroom to the press room to permit them to create their own recordings, thereby enabling them to use the words and voices of counsel and the court nearly contemporaneously. In their motion, these media representatives pointed out that this proposed procedure would, as a practical matter, virtually eliminate the need for press representatives to use the auxiliary courtroom; that it would relieve the burden on court personnel of providing tapes in response to the numerous requests made during each session; that it would reduce the number of people in the "courthouse environs" for purposes of dubbing tapes and that the petitioners would offer to the court "a fully functional electronic system that would permit the Court to delay transmission of a live signal from the courtroom to the press for a period of seconds or even minutes, as the Court desires, and permit the Court to interrupt the transmission during the delay period as the Court deems fit." The motion was filed as a collateral proceeding and given case number 96–X–89.

The defendant Terry Lynn Nichols filed an opposition to the media representatives' petition and a motion to stop distribution of audio tapes of court proceedings. Because of the motion to stop distribution of the audio tapes, the collateral matter was subsumed in this criminal proceeding and further pleadings were filed on the subject. Additionally, arguments were heard on May 1, 1996. The government counsel joined in the position taken by counsel for defendant Nichols and requested the court to stop the sale of audio tapes and also suggested that the court discontinue the practice of the use of the electronic sound recording system as a redundant system. Counsel for the defendant McVeigh found merit and demerit in the positions taken by the other parties.

 Upon reflection, it is this court's conclusion that the ready access to the sound recordings has resulted in the functional equivalent of a broadcast of the court proceedings in violation of Rule 53. In the papers filed, the parties have presented persuasive arguments for and against the policy of that rule. The Supreme Court has very recently made it clear that a district court has no authority to depart from the requirements of the Federal Rules of Criminal Procedure. In *Carlisle v. United States,* —— U.S. ——, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996), the Supreme Court held that a district judge could not grant a motion for a judgment of acquittal filed one day after the seven day filing limit in Rule 29(c) and said in response to an argument that the granting of the motion was within the "inherent power" of the court:

> Whatever the scope of this "inherent power," however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure.

*Id.* at ——, 116 S.Ct. at 1461.

The distribution of tapes in this case is distinguished from the distribution of tapes in cases in which this court has directed the use of the electronic sound recording system to make the official record. In those cases, production and sale of the audio tapes is required to provide access to the official record. In providing the statutory authority for the making of the official record by means of an electronic sound recording system under 28 U.S.C. § 753(b), Congress in effect modi-

fied Rule 53. The use of a sound recording system in this criminal case is not for the purpose of making the official record pursuant to 28 U.S.C. § 753(b) and, therefore, Rule 53 prohibits the release of the tapes. Accordingly, it is now

ORDERED that the court will continue to use an electronic court recording system as a redundant or backup system to the record made by the official court reporter but no copies of the sound recording tapes will be made available for listening or for sale to anyone other than as requested by court personnel for their official duties.