Wayne Bernard TRAYWICKS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–95–771.

Court of Criminal Appeals of Oklahoma.

Oct. 31, 1996.

James T. Rowan, Michael Wilson, Okla. Indigent Defense System, Capital Trial Division, Norman, for Defendant.

Don Deason, Virginia Nettleton, Assistant District Attorneys, Oklahoma City, for State.

William R. Foster, Norman, for Appellant.

W.A. Drew Edmondson, Attorney General, Elaine K. Sanders, Assistant Attorney General, Oklahoma City, for Appellee.

## OPINION

CHAPEL, Vice Presiding Judge:

Wayne Bernard Traywicks was tried by a jury and convicted of Second Degree Murder, in violation of 21 O.S.1991, § 701.8, in the District Court of Oklahoma County, Case No. CRF–93–7824. In accordance with the jury's recommendation, the Honorable Nancy Coats sentenced Traywicks to 250 years imprisonment. Traywicks has perfected his appeal of this conviction.

Traywicks raises the following propositions of error in support of his appeal:

I. The trial court's refusal to continue Mr. Traywicks' trial or bar Officer Bevel's expert testimony prevented appellant from receiving a fair trial and effective assistance of counsel;

II. Prosecutorial misconduct denied Mr. Traywicks a fair trial in violation of United States and Oklahoma Constitutions; and

III. Prejudicial photographs prevented Mr. Traywicks from receiving a fair trial.

After thorough consideration of the entire record before us on appeal including the original record, transcripts, briefs and exhibits of the parties, we have determined that neither reversal nor modification is required under the law and evidence. Accordingly, Traywicks' appeal is denied. However, we find that the issues posed in Proposition II of Traywicks' brief raise issues of first impression before this Court. We will address those issues more fully below. Because Propositions I and III do not raise novel issues and because relief is not warranted under either proposition of error we will not address those propositions any further.

In Proposition II, Traywicks argues that error occurred when the prosecutor referred to Traywicks' post-arrest, post-*Miranda*[1] silence. For the reasons stated below, we agree that error occurred but find that this error was harmless.

The State charged Traywicks with First Degree Murder and filed a Bill of Particulars seeking the death penalty. Traywicks was convicted of the lesser offense of second degree murder, after former conviction of a felony, and was sentenced to 250 years imprisonment.

Traywicks killed his common-law wife, Yvonne Washington. Traywicks and Washington were alcoholics. Traywicks also used crack cocaine occasionally. Traywicks and Washington had a volatile relationship, which was described as mutually combative. During the early evening of December 10, 1993, Traywicks beat Washington to death with a baseball bat. At the time of the murder, both Washington and Traywicks were drunk.

At trial, Traywicks raised the issue of mental defect/alcoholism as a defense. He called several mental health experts to testify about his mental condition at the time of Washington's murder, and he testified in his own behalf. During cross-examination of Traywicks, the prosecutor asked him whether he told Dr. Call (the State's mental health expert) about Washington's murder. Defense counsel objected to the question; the trial court overruled the objection. Traywicks then replied he had not told Dr. Call about the murder itself. On redirect, Traywicks stated Dr. Call did not ask him any questions about the day of the murder. In rebuttal, the State called Dr. Call, who testified that he had asked Traywicks about Washington's murder but that Traywicks refused to answer questions about those events. Dr. Call also testified about Traywicks' mental condition at the time of the crime, and it is evident that Traywicks discussed issues concerning his mental health with Dr. Call. Defense counsel did not object to Dr. Call's testimony.

■ Traywicks argues that testimony concerning his refusal to answer Dr. Call's questions about Washington's murder violates his Fifth Amendment right to remain silent. In *Doyle v. Ohio*,[2] the Supreme Court held that a defendant's silence after he has been arrested and has been given his *Miranda* warnings cannot be used at trial to impeach

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

the defendant.[3] Traywicks argues that the trial court violated his right to remain silent and the holding in *Doyle* by allowing the State to impeach him with evidence regarding his refusal to answer Dr. Call's questions about Washington's murder.

■ *Doyle* applies only after *Miranda* warnings have been given, and pre-*Miranda* silence may be used to impeach a defendant.[4] According to Traywicks' trial counsel, *Miranda* warnings were not given to Traywicks prior to his speaking with Dr. Call. The State argues that since Traywicks did not receive any *Miranda* warnings prior to talking with Dr. Call, *Doyle* is not applicable, or alternatively, that Traywicks waived his right to silence. We reject the State's argument as it is evident that under certain circumstances the State is required to give the defendant *Miranda* warnings prior to an examination by a State psychiatrist, and Traywicks did not waive his right to silence as to the facts of the crime itself.

In *Estelle v. Smith,*[5] the Supreme Court found that a defendant was sentenced to death in violation of the Fifth and Sixth Amendments where, during the sentencing phase of trial, the State sought to prove future dangerousness by introducing unwarned statements that the defendant had made to a state psychiatrist in a pretrial competency examination. The trial court ordered the competency examination *sua sponte* and defense counsel was not notified and was not subsequently made aware of the proceeding. The Supreme Court stated:

> A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against

him at a capital sentencing proceeding. Because respondent did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to Dr. Grigson [the State's psychiatrist] to establish his future dangerousness.[6]

The Supreme Court limited this ruling. The Court stated "[w]hen a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several Federal Circuit Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist." [7] Commentators have construed *Estelle* to indicate a willingness on the Court's part to find that where a defendant initiates psychiatric proceedings or where the State requests an evaluation of the defendant based on the defendant's decision to raise an insanity defense, he waives his Fifth Amendment privilege.[8]

This analysis is consistent with *United States v. Byers,*[9] in which a federal court found that the testimony of a psychiatrist who conducted a court-ordered examination of the defendant did not violate the Fifth Amendment. The court observed that requiring *Miranda* warnings for a psychiatric examination of a defendant, who has raised an insanity or related mental health defense, would enable the defendant to deprive the State of the ability to conduct a mental health examination to rebut his claim of in-

---

**3.** *Accord Parks v. State,* 765 P.2d 790, 793 (Okl. Cr.1988); *Kreijanovsky v. State,* 706 P.2d 541, 543–44 (Okl.Cr.1985); *Dungan v. State,* 651 P.2d 1064, 1065–66 (Okl.Cr.1982).

**4.** *Fletcher v. Weir,* 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982); *Guy v. State,* 778 P.2d 470, 474 (Okl.Cr.1989).

**5.** 451 U.S. 454, 468–69, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981).

**6.** *Estelle v. Smith,* 451 U.S. at 468, 101 S.Ct. at 1876.

**7.** *Estelle,* 451 U.S. at 465, 101 S.Ct. at 1874.

**8.** C.H. Whitebread and C. Slobogin, *Criminal Procedure, An Analysis of Cases and Concepts* at 350 (1993).

**9.** 740 F.2d 1104, 1115 (D.C.Cir.1984) (plurality opinion). The State erroneously attributes this decision to the Tenth Circuit.

sanity.[10] Following *Estelle,* and in accord with *Byers,* the Supreme Court in *Buchanan v. Kentucky,*[11] stated "if a defendant requests ... [a psychiatric] evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested. The defendant would have no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution."

██ In *Hain v. State,*[12] the defendant raised the issue of insanity and the State received the trial court's permission to allow its expert to examine Hain. The State used Hain's statements made during this examination to rebut his defense of insanity. This Court approved the practice, and found that the use of this testimony did not violate Hain's Fifth Amendment right against self-incrimination. Thus, it is clear that when a defendant raises an insanity defense and is required to submit to a mental health examination by the State's expert, the State may introduce the results of the examination to rebut the defendant's insanity defense.

██ However, it does not appear that the State's expert is granted *carte blanche* in examining the defendant. The *Hain* Court further stated the following:

the [State's mental health] testimony ... was admitted solely for the purpose of rebutting Appellant's evidence of extreme emotional disturbance. Dr. Goodman did not testify about any of the criminal acts giving rise to the action against Appellant. From the record, it appears that Appellant was apparently advised of his rights in this regard and declined to discuss the details of the crime with the doctor. A violation of the Fifth Amendment may only arise when the testimony involved is based on the incriminating statements of the defendant. There is no evidence of that here,

thus, there is no reason for the exclusion of the evidence.[13]

Thus, while the defendant may be compelled to answer questions about his mental health, a constitutional violation may occur if the defendant is compelled to reveal details of the crime itself to the State's mental health expert. This distinction makes sense. The State needs the mental health evidence to rebut the insanity defense, and it seems logical that raising that defense waives the defendant's right to silence as to those mental health issues. However, evidence of the crime itself is a distinct and different question from the issue of mental illness. Accordingly, the defendant retains the right to assert his Fifth Amendment privilege as to the details of the crime. Of course, the defendant could waive his privilege to remain silent as to the details of the crime, but that waiver would have to be done knowingly and voluntarily after the administration of *Miranda* warnings.

In Traywicks' case, the State revealed that during the examination by the State's psychiatrist, Traywicks refused to answer questions about Washington's murder. It would seem that since Traywicks could not be compelled to discuss the murder with Dr. Call without being advised of his rights and waiving those rights, it would be error for the State to comment on or elicit evidence about his assertion of that right. The trial court erred when it allowed the State to question Traywicks about his refusal to answer this question. Similarly, the State should not have questioned Dr. Call about Traywicks' refusal to answer such questions.[14]

██ However, even though the admission of this evidence was error, we find this error was harmless. The jury found Traywicks guilty of the lesser offense of second degree murder. He admitted he killed Washington, and it is clear the jury accepted his version of

---

**10.** *Id.*

**11.** 483 U.S. 402, 422–23, 107 S.Ct. 2906, 2918, 97 L.Ed.2d 336 (1987) (citing with approval *United States v. Byers,* 740 F.2d 1104, 1111–1113 (D.C.Cir.1984) (plurality opinion)).

**12.** 852 P.2d 744, 751–52 (Okl.Cr.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1402, 128 L.Ed.2d

75 and —— U.S. ——, 114 S.Ct. 1416, 128 L.Ed.2d 86 (1994).

**13.** *Id.* at 751.

**14.** Defense counsel did not object to Dr. Call's testimony. We review this testimony for plain error only.

the murder. Evidence regarding his decision to decline to answer Dr. Calls' questions about the murder did not prejudice him and was harmless beyond a reasonable doubt. For this reason, we deny Traywicks' appeal.

## DECISION

The Judgment and Sentence of the trial court is **AFFIRMED.**

JOHNSON, P.J., and LANE and STRUBHAR, JJ., concur.

LUMPKIN, J., concurs in results.