2000 OK CR 12

**Terry Lynn NICHOLS, Petitioner**

v.

**DISTRICT COURT OF OKLAHOMA COUNTY, State of Oklahoma, Honorable Robert M. Murphy, Jr., Associate District Judge, Respondent**

No. PR–2000–703.

Court of Criminal Appeals of Oklahoma.

June 1, 2000.

*ORDER GRANTING PETITION FOR WRIT OF PROHIBITION AND/OR WRIT OF MANDAMUS AND DENYING APPLICATION TO STAY PROCEEDINGS*

¶ 1 On May 26, 2000, Petitioner Terry Lynn Nichols, by and through counsel Brian Hermanson, W. Creekmore Wallace, Rodney J. Uphoff, and Barbara E. Bergman, filed in this Court an "Application to Assume Jurisdiction for Alternative Writ of Prohibition and/or Mandamus [with combined brief]". Petitioner's request for relief is threefold: "1) an order from this Court immediately staying all criminal proceedings in Oklahoma County District Court Case No. CF–99–1845 until further notice from this or the [Oklahoma] Supreme Court should the Supreme Court accept original jurisdiction of this matter; 2) an order assuming original jurisdiction and directing this application to assume original jurisdiction be transferred to the Supreme Court of Oklahoma for a determination of jurisdiction of the subject matter; and 3) an alternative writ of prohibition and/or mandamus from this Court vacating Associate District Judge Robert M. Murphy, Jr.'s order of May 8, 2000, allowing cameras into the courtroom for the preliminary hearing, trial, and other proceedings in this matter." Petitioner argues that original jurisdiction should be assumed because the trial court's order constitutes an exercise of judicial power which is unauthorized by law and in violation of Canon 3(B)(9)(e)(2) of the Code of Judicial Conduct. Petitioner further argues the trial court's order infringes on his constitutional rights to a fair trial by an impartial jury as guaranteed by U.S. Const. amend. VI and XIV and by Okla. Const. art. II, §§ 7 and 20 and his right to due process secured by U.S. Const. amend. V and XIV and Okla. Const. art. II, § 7, and therefore extraordinary relief is the only adequate remedy.

¶ 2 This case arises out of the prosecution by the State of Oklahoma of Terry Nichols based upon his alleged participation in the April 19, 1995, bombing of the Alfred P. Murrah Federal Building in Oklahoma City, Oklahoma. Petitioner has been charged with 163 felony counts, including 160 counts of first degree murder. On February 25, 2000, numerous media organizations (the "Media")[1] filed a motion asking Judge Murphy to permit them to televise the preliminary hearing, trial, and other proceedings in this case. Both the State and the defense objected to the Media's motion. On March 10, 2000, the court held a hearing on the motion. On May 8, 2000, Judge Murphy issued an order granting the Media the right to broadcast any and all court proceedings in this matter. Judge Murphy acknowledged Canon 3(B)(9)(e)(2) of the Code of Judicial Conduct, promulgated by the Oklahoma Supreme Court, explicitly prohibits broadcast in this situation. However, he determined the Canon violated the State and Federal Constitutions and therefore need not control his decision. He found the trial judge or presiding judge has final authority to order, manage and control the courtroom and that camera coverage would not adversely affect Petitioner's right to a fair trial. The record indicates that several motions are scheduled for June 7, 2000, and the preliminary hearing is now set for August 7, 2000.

¶ 3 Jurisdiction to decide the constitutionality of the Canons of the Code of Judicial Conduct is vested in the Oklahoma Supreme Court. Therefore, we do not address or rule on Petitioner's claim concerning the validity of Judge Murphy's ruling insofar as it relates to the constitutionality of Canon 3(B)(9)(e)(2).

¶ 4 However, jurisdiction to ensure due process in criminal proceedings rests with the Court of Criminal Appeals. Okla. Const., art. VII § 4. When criminal charges are filed against an individual and when a criminal defendant is tried for those alleged crimes, it is this Court which must ultimately decide the correctness and fairness of the entire criminal proceedings.

¶ 5 For a writ of prohibition, Petitioner must establish: (1) a court, officer or

---

1. Courtroom Television Network LLC ("Court TV"), The New York Times Company, for itself and its division KFOR–TV (Channel 4, Oklahoma City) ("KFOR"), Ohio/Oklahoma Hearst Argyle Television, Inc. (Channel 5, Oklahoma City) ("KOCO"), KOTV, Inc. (Channel 6, Tulsa) ("KOTV"), KTUL, L.L.C. (Channel 8, Tulsa) ("KTUL"), and Griffin Television, L.L.C. (Channel 9, Oklahoma City) ("KWTV").

person has or is about to exercise judicial or quasi-judicial power; (2) the exercise of said power is unauthorized by law; and (3) the exercise of said power will result in injury for which there is no other adequate remedy. Rule 10.6(A), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (1999). For a writ of mandamus, Petitioner has the burden of establishing: (1) he has a clear legal right to the relief sought; (2) the respondent's refusal to perform a plain legal duty not involving the exercise of discretion; and (3) the adequacy of mandamus and the inadequacy of other relief. Rule 10.6(B). From a review of the record before this Court, and applicable legal authority, we find Petitioner has met the burden for a writ of prohibition and/or mandamus.

■ ¶ 6 The concepts of fair trial and free press are embodied within our constitutional framework. However, the "public trial" guaranteed by the Sixth Amendment is not one belonging to the public, but one belonging to the accused. *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 1662, 14 L.Ed.2d 543 (1965). The atmosphere essential to the preservation of a fair "public" trial—the most fundamental of all freedoms—must be maintained. *See Id.,* 381 U.S. at 540, 85 S.Ct. at 1632. In order to ensure a fair trial, courts have devised careful safeguards by rule, contempt proceedings and reversal of. convictions obtained under unfair conditions. *Id.* In *Estes,* the U.S. Supreme Court found the use of television, however, "cannot be said to contribute materially to [the] objective of a fair trial." *Id.,* 381 U.S. at 544, 85 S.Ct. at 1634. "Rather its use amounts to the injection of an irrelevant factor into court proceedings. In addition experience teaches that there are numerous situations in which it might cause actual unfairness—some so subtle as to defy detection by the accused or control by the judge." *Id.* 381 U.S. at 544–45, 85 S.Ct. at 1634. The potential impact of television on the jurors, the possibility the quality of the testimony in criminal trials may be impaired, the additional responsibilities the presence of television places on the trial judge, and the impact of courtroom television on the defendant were among the concerns mentioned by the Court. *Id.,* 381 U.S. at 545–549, 85 S.Ct. at 1634–36.

■ ¶ 7 The requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 610, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570 (1978). No constitutional provision guarantees a right to televise trials. First Amendment rights of the press are subject to reasonable time, place, and manner restrictions. *United States v. Hastings,* 695 F.2d 1278, 1282 (11th Cir.1983). The federal courts prohibit televising of trials by specific rule. *See* Rule 53, Federal Rules of Criminal Procedure.[2]

■ ¶ 8 Television is a powerful medium. At its best, it educates and informs. At its worst, it has the potential for "distorting the integrity of the judicial process bearing on the determination of the guilt or innocence of the accused, and, more particularly, for casting doubt on the reliability of the fact-finding process carried on under such conditions." *Estes,* 381 U.S. at 592, 85 S.Ct. at 1664 (Harlan J., concurrence). Petitioner's fundamental right to a fair trial assured by the Due Process Clause of the Fourteenth Amendment takes precedence over the interest of the press in televising the proceedings in this case.

'A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. * * * (T)o perform its high function in the best way 'justice must satisfy the appearance of justice.'

*In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (internal citation omitted).

■ ¶ 9 In our analysis of the issues, as set forth above, we have relied extensively

2. Rule 53 is more restrictive than Canon 3(B)(9)(e)(2) and the federal courts have consistently enforced its provisions. *See Conway v. U.S,* 852 F.2d 187, 188 (6th Cir.1988); *United States v. Edwards,* 785 F.2d 1293, 1296 (5th Cir.1986); *United States v. Kerley,* 753 F.2d 617, 619–20 (7th Cir. 1985); *United States v. Hastings,* 695 F.2d 1278, 1284 (11th Cir.1983); *United States v. McVeigh,* 931 F.Supp. 753, 755 (D.Colo. 1996).

upon United States Supreme Court precedent in resolving the federal constitutional questions as we are required to do under principles of federalism. However, as the court of last resort for criminal appeals in the State of Oklahoma we are equally obligated to apply the Oklahoma Constitution. Article 2 of the Oklahoma Constitution affords an accused the right to a fair public jury trial and due process of law. Our state constitution also affords all persons the freedom of speech and press. Okla. Const. art. II, § 22. Thus, the issue before us presents the same clash of constitutional rights as discussed above in our analysis of the federal constitutional claims. And we reach the same result. We specifically find that to televise or record a criminal trial over the objection of a defendant would violate an accused's right to due process of law as guaranteed by Section 7, Article 2 of the Oklahoma Constitution.

¶ 10 In order to ensure the solemnity of the judicial proceedings, to minimize the potential tainting of a possible future jury pool, to curtail outside interference with these criminal proceedings, and to ensure the reliability of the result ultimately determined in this case, **Petitioner's Application for a Writ of Prohibition and/or Mandamus is RANTED. The Application to Stay the Proceedings is DENIED. The May 8, 2000, order by Judge Murphy granting the Media the right to broadcast any and all court proceedings in this matter is hereby VACATED.**

¶ 11 **IT IS SO ORDERED.**

¶ 12 **WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 1st day of June, 2000.

/s/ Reta M. Strubhar
RETA M. STRUBHAR, Presiding Judge
/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Vice Presiding Judge
CHARLES A. JOHNSON, Judge, Recuse
/s/ Charles S. Chapel
CHARLES S. CHAPEL, Judge
/s/ Steve Lile
STEVE LILE, Judge