2007 OK CR 26

**Harold Duwayne HAMILL, Petitioner**

v.

**The Honorable Rocky L. POWERS, Associate District Judge, Bryan County, Oklahoma, Respondent.**

**No. MA–2007–45.**

Court of Criminal Appeals of Oklahoma.

June 28, 2007.

As Corrected July 10, 2007.

---

18. The majority opinion relies upon the absence of authority on this issue to reject Bland's constitutional claim.

19. *See* note 1 *supra.*

## ORDER ASSUMING JURISDICTION AND GRANTING WRIT OF MANDAMUS

¶ 1 The Petitioner, Harold Duwayne Hamill, is charged in the District Court of Bryan County, Case No. CF–2005–524, with First Degree Rape. He has petitioned this Court for a writ of mandamus, to order the Respondent to permit a psychological evaluation of the complainant by an expert chosen by the defense. For the reasons explained below, we assume original jurisdiction in this matter and grant Petitioner's request.

## PROCEDURAL HISTORY

¶ 2 Petitioner is charged with the First Degree Rape of an adult woman. The State alleges that the complainant was incapable of consenting to sexual relations due to mental retardation.[1] Before filing charges, the State employed a licensed counselor to examine the complainant and administer intelligence tests to her. The counselor testified at preliminary hearing and gave his opinion about the complainant's ability to understand and make decisions about sexual matters.

¶ 3 After bindover, Petitioner moved the district court to order the production of cer-

---

1. *See* 21 O.S.2001, § 1114(A)(2) ("Rape in the first degree shall include ... rape committed upon a person incapable through mental illness or any unsoundness of mind of giving legal consent regardless of the age of the person committing the crime").

tain records concerning the complainant's mental capacity, and asked the court to permit the defense to have the complainant evaluated by its own qualified expert. After a hearing, the court (without objection by the State) granted the request for production of certain records, but took the request to permit another psychological evaluation under advisement and invited the parties to submit any authority they might have on the issue. On August 14, 2006, the district court denied Petitioner's request by court minute, stating that "[n]o authority has been presented to sustain [Petitioner's] position." This ruling was later memorialized in a formal order issued January 10, 2007. On January 12, 2007, Petitioner filed a Petition for Writ of Mandamus in this Court with a brief in support, and submitted relevant documents and transcripts filed below. On January 19, 2007, we stayed the district court proceedings pending resolution of the Petition. On March 14, 2007, we directed a response from the Respondent or his designated representative, and permitted the complainant or her representative to respond as well.

¶ 4 Petitioner claims that he has a clear legal right to have the complainant examined by an expert secured by the defense, because the State intends to use its own expert evaluation to prove that the complainant lacked the ability to consent to sexual relations. The State, on behalf of the complainant, responds that there is no legal authority for granting Petitioner's request, since it does not involve inspection of physical evidence, to which Petitioner would clearly be entitled. The State argues that Petitioner can sufficiently prepare his defense by reviewing the conclusions of the State's expert, and the various records on which that expert relied in addition to his personal interview with the complainant. The Honorable Respondent concurs in the State's argument.

## PROPRIETY OF THE WRIT

■ ¶ 5 We must first determine whether the issue presented is the proper subject of an extraordinary writ. This Court is vested with authority to issue writs as necessary in aid of its exclusive appellate jurisdiction over criminal prosecutions. Okl. Const. art. 7, § 4; 20 O.S.2001, § 41. We have often noted that writs of mandamus and prohibition are not appropriate to interfere in matters wholly within a district court's discretion, or where some alternative remedy is available to the petitioner.[2] But we have also held that writs may issue to prevent a district court from taking action which would clearly be an abuse of its discretion.[3] Furthermore, we have held, in other contexts, that a district court abuses its discretion when it acts under a mistaken belief that it has no discretion as to a particular matter.[4] Finally, we have often found issuance of such writs to be appropriate to resolve matters of constitutional significance.[5] We are not alone in having used writs of prohibition and mandamus in these circumstances.[6]

2. See, e.g., State ex rel. Worthen v. Walker, 1983 OK CR 130, ¶¶ 3–4, 668 P.2d 1174, 1175. To obtain a writ of mandamus, the petitioner has the burden of establishing: (1) that he has a clear legal right to the relief sought; (2) the respondent's refusal to perform a plain legal duty not involving the exercise of discretion; and (3) the adequacy of mandamus and the inadequacy of other relief. See Rule 10.6(B), Rules of the Oklahoma Court of Criminal Appeals, 22 O.S., Ch. 18, App. (2007).

3. See, e.g., State ex rel. Boatman v. Payne, 97 Okl.Cr. 48, 51, 257 P.2d 842, 846 (1953) ("We agree that this writ does not lie to control the judicial discretion of the judge or court.... But this discretion is not unlimited.... It must be a sound discretion and according to law" (citation omitted)); State ex rel. Sims v. Caruthers, 1 Okl. Cr. 428, 437, 98 P. 474, 477 (1908) ("Finding, therefore, that said relator has a plain and ade-

quate remedy at law, he is not entitled to a writ of mandamus at this time; but cases might arise where, through an abuse of the discretion of the trial judge, it would be otherwise").

4. Walker v. State, 1989 OK CR 65, ¶ 5, 780 P.2d 1181, 1183.

5. See, e.g., Nichols v. District Court of Oklahoma County, 2000 OK CR 12, 6 P.3d 506 (district court's decision to allow media broadcast of criminal proceedings, while grounded in constitutional rights to free speech and a free press, violated defendant's constitutional right to a fair trial).

6. See, e.g., Sharp v. Tulsa County Election Board, 1994 OK 104, ¶ 4, 890 P.2d 836, 839 ("This Court has the authority to issue a writ of mandamus when the questions are publici juris, or

¶ 6 On several occasions, we have found the issuance of a writ of mandamus or prohibition appropriate to afford the accused pretrial access to certain types of evidence in the State's possession. At the time many of these cases were decided, there was no explicit statutory authority for the result reached. Rather, each case was decided on its particular facts and the overarching constitutional right to a fair trial.[7]

¶ 7 From a review of the record, it appears that the district court believed it had no authority to permit a defense expert to conduct a psychological evaluation of the complainant. For the reasons explained below, we find that the court does have such authority under the particular circumstances of this case. We grant the writ to answer that limited question, because in these circumstances it bears directly on Petitioner's constitutional right to a fair trial.

## ANALYSIS

¶ 8 There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). Nothing in the federal Constitution precludes the States from experimenting with different discovery schemes aimed at "enhanc[ing] the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or inno-

cence." *Williams v. Florida*, 399 U.S. 78, 82, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446 (1970). Although the Due Process Clause "has little to say regarding the amount of discovery which the parties must be afforded, ... it does speak to the balance of forces between the accused and his accuser." *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82 (1973).

¶ 9 The United States Supreme Court has been "particularly suspicious" of state rules which provide nonreciprocal benefits to the prosecution, at least when the lack of reciprocity interferes with the defendant's ability to secure a fair trial. *Wardius*, 412 U.S. at 474 & n. 6, 93 S.Ct. at 2212 & n. 6. Over the past several decades, Oklahoma, like most jurisdictions, has moved away from a "trial by ambush" or "poker game" approach to criminal prosecutions, and toward more even-handed discovery procedures. This shift fosters the orderly administration of justice; it reduces the delay that accompanies surprise, enables the accused to make more informed decisions about his prospects at trial, and seeks, in the end, to make the trial an impartial search for truth. As noted above, we have often used writs of prohibition and mandamus to clarify what "due process" requires with regard to particular pretrial discovery issues. In this case, the State enjoys a benefit not through information obtained from the defense, but through its nat-

---

when some unusual situation exists so that a refusal to exercise jurisdiction would work a great wrong or a denial of justice.... The writ of mandamus here was necessary to prevent the possibility of a constitutional injustice" (citations omitted)); *State v. Ross*, 76 Okl. 11, ¶ 3, 183 P. 918, 920 (1919) ("[I]t seems to be very generally and wisely held, that upon sufficient showing the court should exercise original jurisdiction in cases involving an unusual situation, or where to decline to entertain jurisdiction would work a great wrong or result in a practical denial of justice").

7. *See, e.g., English v. District Court of Adair County*, 1972 OK CR 1, ¶ 3, 492 P.2d 1125, 1126 (writ issued in the interests of "fundamental justice," ordering the State to furnish grand jury testimony to defendant, where prosecutor had circumvented defendant's statutory right to such testimony by dismissing indictment and refiling charges via information); *Doakes v. District Court of Oklahoma County*, 1968 OK CR 214,

¶¶ 5, 15, 447 P.2d 461, 463, 465 (writ of mandamus issued, in the interests of "substantial justice," directing the district court to permit the defendant access to her own statements to police, as well as to the weapons used in the homicide); *Layman v. State*, 1960 OK CR 64, ¶ 12, 355 P.2d 444, 449 (writ of mandamus issued, in the interests of "fairness," to compel pretrial disclosure of a technical report that the State intended to rely on at trial); *State ex rel. Sadler v. Lackey*, 1957 OK CR 119, ¶ 13, 319 P.2d 610, 615 (where this Court, in the interests of "equal and exact justice," denied a writ to prohibit the compelled disclosure of a forensic report that was key to the State's prosecution for vehicular homicide). Indeed, the Criminal Discovery Code, 22 O.S.Supp. 2002, § 2002, was preceded by this Court's promulgation of similar discovery rules in *Allen v. District Court of Washington County*, 1990 OK CR 83, 803 P.2d 1164, which also involved a request for an extraordinary writ.

ural investigative advantage: its ability to psychologically evaluate a cooperative complaining witness even before charges are filed. Yet as the Supreme Court has noted, "the State's inherent information-gathering advantages suggest that if there is to be any imbalance in discovery rights, it should work in the defendant's favor." *Id.* at 475 & n. 9, 93 S.Ct. at 2212 & n. 9.

¶ 10 The State apparently intends to use its expert to establish that the complainant was not mentally capable of consenting to sexual relations. The mental state of the complainant thus bears directly on an essential element of the offense with which Petitioner is charged. There is no question that under our Criminal Discovery Code, Petitioner is entitled to notice of the State's intention to use this expert as a witness at trial, and is entitled to a copy of any report the expert has compiled. 22 O.S.Supp.2002, § 2002(A)(1)(a), (d). Indeed, the defense was able to cross-examine the State's expert at preliminary hearing.

¶ 11 However, as the State's expert admitted, assessing the mental state of a person is largely a subtle and subjective endeavor.[8] A defense expert's review of the State's ex-

pert's testimony and findings is not always sufficient. Such a second-hand assessment will often lack the aura of validity conferred upon the expert who actually performed the examination. We find that Petitioner's access to the findings of the State's expert does not completely satisfy due process concerns in this particular case.

¶ 12 While the situations warranting such action are admittedly rare, most jurisdictions at least recognize the trial court's authority to order a psychological examination of the complaining witness, even in the absence of express statutory provision.[9] We are particularly persuaded by several decisions which hold that a defendant is entitled to conduct such an evaluation if he demonstrates sufficient compelling circumstances. Such circumstances include whether the complainant's mental state bears directly on an essential element of the charge, and whether the State intends to offer the testimony of its own expert to support that element of proof at trial. *See, e.g., State v. Doremus,* 2 Neb.App. 784, 514 N.W.2d 649 (1994);[10] *State v. Maday,* 179 Wis.2d 346, 507 N.W.2d 365 (1993);[11] *People v. Wheeler,* 151 Ill.2d 298, 176 Ill.Dec. 880, 602 N.E.2d

---

8. As the State's psychologist, Greg Howse, explained at preliminary hearing, the intelligence test he administered does not render a single "intelligence quotient," nor does it render a particular "age" at which the subject is functioning. Transcript of Greg Howse, excerpted from preliminary hearing held March 2, 2006 (hereafter P.Tr.) at 5, 7. Howse testified that his findings were partially subjective by nature, and that another, equally qualified mental-health professional might reach a different conclusion. (P.Tr. 21–23)

9. *See generally* Gregory D. Sarno, Annotation, *Necessity or Permissibility of Mental Examination to Determine Competency or Credibility of Complainant in Sexual Offense Prosecution,* 45 A.L.R.4th 310, § 3.

10. In *Doremus,* the state charged one mentally retarded adult with sexually assaulting another mentally retarded adult. At trial, the State used its own expert's psychological evaluation to show that the complainant could not understand the concept of sexuality and therefore could not consent to sexual activity. The trial court had denied defense requests for an independent psychological evaluation. The Nebraska Court of Appeals found that the defendant had presented

sufficient compelling reasons for his request, since the mental state of the complainant bore directly on an essential element of the charge. The court rejected the State's suggestion that a defense expert's review of the State's expert's findings was sufficient: "[A]ny testimony that defendant could have presented by a nonexamining expert could not rise to the level of credibility of that of the State's examining expert." 514 N.W.2d at 654.

11. In *Maday,* the defendant faced multiple counts of child sexual abuse. The prosecution gave notice that it intended to offer five expert witnesses to testify that the behaviors of the two complainants were consistent with those of sexual abuse victims that the experts had seen in the past. In response, the defendant asked the trial court to order that the complainants submit to psychological evaluations by qualified experts chosen by the defense. The trial court denied the request, and the defendant sought review of this pretrial ruling by interlocutory appeal. The Wisconsin Court of Appeals granted the petition, holding that the trial court has discretion to grant a defense request for psychological examination of the complainant when he demonstrates a "compelling need," and remanded for further proceedings. 507 N.W.2d at 367.

826 (1992);[12] *State v. Rhone*, 566 So.2d 1367 (Fla.App.1990);[13] and *State v. Garcia*, 94 N.M. 583, 613 P.2d 725 (App.Ct.1980).[14] In several of these cases, the issue was considered by the appellate court through some sort of interlocutory appeal, similar to the procedural posture of this case.

¶ 13 We make two observations here. First, if the complainant here were to sue Petitioner in a civil action based on the alleged sexual assault, Petitioner would almost certainly be entitled, under Oklahoma's civil discovery rules, to have her undergo the same type of psychological examination he seeks in this criminal prosecution.[15] Second, when the criminally accused intends to offer evidence of his own mental condition to support an insanity defense at trial, this Court has never questioned the district court's inherent authority to "level the playing field" by permitting the State to evaluate him with its own mental-health experts.[16] Surely, the criminally accused, facing a serious loss of liberty, is entitled to the same quality of discovery granted to every other type of litigant in our justice system.

¶ 14 We therefore join those jurisdictions which have held that the trial court has inherent authority to order a psychological or psychiatric evaluation of the complainant in a criminal prosecution, when the defendant has demonstrated sufficient compelling circumstances. Our Criminal Discovery Code gives the district court authority to intervene and modify the discovery process as unique circumstances may warrant. 22 O.S.Supp.2002, § 2002(E). In cases such as this one, where the complainant's mental state bears directly on an essential element of the offense, and the State intends to offer its own expert testimony on the issue, due process requires that the accused be afforded the opportunity for pretrial investigation of substantially similar quality.[17] Of course, the trial court's authority includes the discretion to determine

12. In *Wheeler*, a prosecution for aggravated sexual assault, the State gave pretrial notice that it intended to offer expert testimony that the complainant suffered from "Rape Trauma Syndrome." The defendant moved to conduct his own psychological examination of the complainant, but that request was denied. On appeal from the defendant's conviction, the Supreme Court of Illinois rejected the claim that defense access to the State's expert's findings was sufficient due process: "An expert who has personally examined a victim is in a better position to render an opinion than is an expert who has not done so.... Because the State in this case had the exclusive right to examine [the complainant], the credibility of its expert was elevated above that of any nonexamining expert defendant could call." 176 Ill.Dec. at 886–87, 602 N.E.2d at 832–33.

13. In *Rhone*, the defendant was charged with sexual battery against an adult woman with whom he had been in a relationship. The State gave notice that it intended to introduce, at trial, expert psychological testimony that the complainant suffered from "Battered Woman Syndrome," which bore on her ability to consent to sexual relations with the defendant—an essential element of the offense. In response, the defendant moved for an order requiring the complainant to submit to a psychological evaluation conducted by an expert retained by the defense. The trial court granted the defendant's request. The Florida Court of Appeals denied the State's petition for review by interlocutory appeal, finding "strong and compelling" reasons supporting the trial court's ruling. 566 So.2d at 1369.

14. In *Garcia*, the defendant was convicted of sexual assaults against a minor. The state was required to prove force or coercion which resulted in "mental anguish"; accordingly, before trial, the defendant moved the trial court to order that the complainant submit to a psychological evaluation. The trial court concluded that it had no authority to do so. On appeal, the New Mexico Court of Appeals held otherwise, particularly because the complainant's mental state bore on an essential element of the charge, and reversed for a new trial. 613 P.2d at 728–29.

15. *See* 12 O.S.2001, § 3235, which provides in part that when the mental condition of a party or of a person under the legal control of a party is in controversy, and such person "relies upon that condition as an element of his claim or defense," an adverse party may take a mental examination of such person.

16. *Lewis v. State*, 1998 OK CR 24, ¶ 38, 970 P.2d 1158, 1171. *See also Lockett v. State*, 2002 OK CR 30, ¶ 22, 53 P.3d 418, 426; *Traywicks v. State*, 1996 OK CR 54, ¶ 12, 927 P.2d 1062, 1065; *Hain v. State*, 1993 OK CR 22, 852 P.2d 744, 751.

17. We express no opinion on whether such psychological evaluations would ever be material in prosecutions where "consent" to a sexual act is impossible as a matter of law, due to the complainant's age.

the time, place, and manner of such examinations, including who may be present and what subjects may be covered. We are confident that the trial court will use that authority to allay any concerns that the complainant might be unduly inconvenienced or embarrassed by a second examination. While the court cannot compel the complainant to participate in such an evaluation, if the complainant refuses to do so, the court may find it appropriate to bar the State from introducing its own psychological evidence at trial. *See Morgan v. District Court of Woodward County*, 1992 OK CR 29, ¶ 9, 831 P.2d 1001, 1005 ("[t]he District Court has inherent and statutory powers to do many things when the judicial process is thwarted").[18]

¶ 15 For the reasons given above, the petition for writ of mandamus should be, and is hereby, **GRANTED.** The stay of proceedings previously issued in this matter is hereby **LIFTED,** and the case is **REMANDED** to the District Court for further proceedings consistent with this Order.

¶ 16 **IT IS SO ORDERED.**

/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Presiding Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Vice Presiding Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL, Judge

/s/ Arlene Johnson
ARLENE JOHNSON, Judge

/s/ David B. Lewis
DAVID B. LEWIS, Judge

---

18. Although the pleadings also raise the question of who should bear the costs of such expert assistance, that question is not squarely before us in this case. Oklahoma law provides that if the accused is indigent and has counsel appointed at public expense, then requests for expert assistance and payment for such services shall be handled by the Oklahoma Indigent Defense System (OIDS); services approved in all other cases are to be paid by the county court fund. 22 O.S.2001, § 1355.4(D)(2); 20 O.S.Supp.2002, § 1304(B)(19). The record indicates that Petitioner is indigent and has appointed counsel. Counsel submitted to the district court the *curriculum vitae* of a psychologist that counsel felt was qualified to conduct the evaluation he has requested. The record suggests that counsel has obtained at least provisional approval from the Executive Director of OIDS to hire such an expert in this case.